# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **KASHAWNA HOLMES** | ) | |
| 13113 Shadyside Lane | ) | |
| Germantown, MD 20874 | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-2169 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL REQUESTED** |
| **UNIVERSITY OF THE DISTRICT OF** | ) | |
| **COLUMBIA** | ) | |
| 4200 Connecticut Avenue NW | ) | |
| Washington, DC 20008 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

## NATURE OF ACTION

1. Plaintiff Kashawna Holmes (hereinafter, "Plaintiff" or "Ms. Holmes") brings this action against her former employer, University of the District of Columbia (hereinafter, "Defendant" or "UDC") to redress willful violations of the District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code § 32-509; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; and District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*  Ms. Holmes seeks to recover all lost wages, salary, employment benefits, and any other compensation denied or lost due to UDC's violations of the DCFMLA, Title VII, ADA and DCHRA; pre- and post-judgment interest, compensatory damages, consequential damages, punitive damages, attorneys' fees, costs, and appropriate injunctive and equitable relief.

1

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3.  This Court has personal jurisdiction over Defendant because it is an agency of the District of Columbia government and Defendant's actions and omissions alleged herein occurred in the District of Columbia.

4.  Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in the District of Columbia and because at all relevant times, Defendant was doing business in the District of Columbia.

## INVOCATION OF ADMINISTRATIVE REMEDIES

5.  Plaintiff filed a timely charge of discrimination with the District of Columbia Office of Human Rights ("DCOHR") on February 20, 2015.

6.  DCOHR is a Fair Employment Practices Agency (FEPA) with which the Equal Employment Opportunity Commission ("EEOC") has a work sharing agreement. Consequently, Plaintiff's charge was automatically cross-filed with the EEOC upon filing with DCOHR.

7.  Upon her request, the EEOC issued Plaintiff her Notice of Right-to-Sue on November 17, 2015.

8.  After it was informed that Plaintiff had requested a Right-to-Sue letter, DCOHR administratively dismissed Plaintiff's charge.

9.  This complaint is filed within ninety days of Plaintiff's Notice of Right-to-Sue letter.

## PARTIES

10. Plaintiff Kashawna Holmes is a resident of Germantown, Maryland.  Ms. Holmes was employed by UDC as a Program Coordinator from March 1, 2013 through September 30, 2014.

11. Defendant UDC is the only public university located in Washington, D.C.  An independent agency of the District of Columbia government, UDC is located in and operates in the District of Columbia.  UDC employs more than fifty (50) employees in the District of Columbia.

## FACTUAL ALLEGATIONS

### Ms. Holmes Begins Employment with UDC

12. On February 26, 2013, Ms. Holmes was offered employment as a Program Coordinator for the Institute of Gerontology in the College of Agriculture, Urban Sustainability and Environmental Sciences at UDC.

13. Ms. Holmes accepted the offer and began work as a Program Coordinator on March 1, 2013.

14. Ms. Holmes' primary responsibility in this position was to coordinate and manage the Institute of Gerontology's Senior Companion Program, which pairs volunteers with older adults who need extra assistance to live independently in their homes and communities.

15. In her offer letter, Ms. Holmes' position was classified as a "temporary sponsored program appointment" with a term of employment from March 1, 2013 through September 30, 2013.  The letter explained that the position was not permanent because it was subject to the continued availability of grant funding.

16. Nevertheless, Ms. Holmes was reassured by her supervisor, Laurie Thompson Blackman, that her position was permanent for all practical purposes, given that the grant that funded the position had been continuously renewed for approximately 30 years.

17. The male employee who had most recently occupied Ms. Holmes' position had held it for five years.  Upon information and belief, this employee had also been hired for a "temporary sponsored program appointment" like Ms. Holmes.

18. When her initial term ended, on October 1, 2013, Ms. Holmes' employment simply continued.

19. In or around November 2013, Laurie Thompson Blackmon left UDC.  Elgloria Harrison, then an Associate Professor and Special Assistant to the Dean, was appointed to fill the position on an interim basis.

20. In or around March 2014, after Ms. Holmes had worked in her position for over a year, Ms. Holmes was classified on her pay statements as "staff" and she became eligible for several employment benefits, including health and dental insurance, short term disability, and enrollment in UDC's retirement savings plan.

**Ms. Holmes Learns She is Pregnant**

21. In January 2014, Ms. Holmes learned that she was pregnant.

22. Having suffered from several previous miscarriages, Ms. Holmes' pregnancy was considered high risk.  Consequently, Ms. Holmes chose not to disclose condition, nor discuss it with her coworkers, so early in her pregnancy

23. In the beginning of 2014, a staff meeting was held.  Unexpectedly, Ms. Harrison asked Ms. Holmes, "Is there something you need to tell me?" in front of her co-workers, while gesturing towards Ms. Holmes' stomach.

24. Feeling pressured, Ms. Holmes confirmed that she was pregnant.  Ms. Holmes was extremely surprised and uncomfortable by this exchange.

25. Several weeks later, Ms. Harrison commented to Ms. Holmes, in front of her coworkers, that she would never have considered having a baby when she was living with a roommate or at home.  Ms. Harrison said that by the time she had a baby, she was married and she and her husband had a house together.

26. At the time these comments were made, Ms. Holmes was living with a roommate and she was not married to her baby's father, who was then working overseas.  Ms. Harrison, aware of these facts, was expressing her belief that Ms. Holmes' behavior did not conform to her perception of acceptable female gender roles.

27. The conversation embarrassed Ms. Holmes and made her self-conscious.

### Ms. Holmes is Questioned About Her High-Risk Pregnancy

28. Given the risks associated with her pregnancy, Ms. Holmes was required to see a specialist in addition to her regular obstetrician.

29. On or around April 4, 2014, Ms. Holmes had two doctor's appointments.  Prior to attending these appointments, Ms. Holmes had requested and was approved for one day of leave by Lillie Monroe-Lord, Ms. Harrison's supervisor.

30.  On or around April 6, 2014, Ms. Harrison sent Ms. Holmes an e-mail stating, "I'm curious, Does your doctor require an all day appointment? I have not know [sic] doctor's appointments to be all day; however, you may have a special case."

31.  Upon receipt of this email, Ms. Holmes immediately went to speak with Ms. Monroe-Lord.  Through tears, Ms. Holmes confided in Ms. Monroe-Lord that Ms. Harrison's

inquiry made her uncomfortable and that she did not understand why Ms. Harrison was asking these questions after her leave had already been approved.

32. Ms. Monroe-Lord did not find any fault with Ms. Harrison's probing, and she instructed Ms. Holmes to answer her questions and speak with Ms. Harrison about her medical condition.

33.  At that point, Ms. Holmes felt that she had no choice but to disclose to Ms. Harrison that she had a high-risk pregnancy.  Upon learning this information. Ms. Harrison probed further, asking, "What makes you high risk?"

34. When Ms. Holmes asked Ms. Harrison why she needed this information, Ms. Harrison said that she needed to make sure that Ms. Holmes was not "abusing her leave" – despite the fact that Ms. Holmes was clearly pregnant and that the Human Resources Department had already approved her request for leave.

35. Ms. Harrison also suggested in this conversation that Ms. Holmes consider taking FMLA leave.

### Ms. Holmes Takes FMLA Leave for Her Pregnancy-Related Medical Condition

36. On July 3, 2014, Ms. Holmes was diagnosed with intrauterine fetal growth restriction and preterm labor.

37. Ms. Holmes' doctor, Sheri Hamersley, placed her on complete bed rest due to the high risk of premature delivery.

38. Ms. Holmes requested FMLA leave from July 7, 2014 until her expected delivery date, September 20, 2014.  UDC approved her request.

39. By July 16, 2014, Ms. Holmes had exhausted her sick and annual leave hours. Thereafter, she was placed in "Salaried Family Leave without Pay" status.

## UDC Posts Ms. Holmes' Position

40. On or about August 27, 2014, while Ms. Holmes was on leave, she saw that her position at UDC had been posted online.

41. Confused and concerned, Ms. Holmes contacted William Ramsay, the Human Resources Compliance Officer at UDC.  Mr. Ramsay had explained Ms. Holmes' FMLA rights to her, including job protection.

42. Mr. Ramsay told Ms. Holmes that he did not know anything about the posting, but promised to obtain more information and get back to her.

43. After a couple of weeks with no response, Mr. Ramsay finally returned Ms. Holmes' calls, but he said that he still did not have any information.

44. Not knowing whether she would have a job to return to, just three weeks before her due date, caused Ms. Holmes extreme stress and anxiety.  She developed high blood pressure and other medical complications and her doctor recommended inducing labor early.

45. Ms. Holmes gave birth to a baby boy on September 2, 2014.

## Ms. Holmes' Termination

46. Shortly after her son's birth, Ms. Holmes saw that she had received an email from Ms. Harrison, dated August 29, in her personal email account.  The email advised her that UDC was not renewing her appointment and that her employment would end on September 30, 2014.

47. Upon learning this information, Ms. Holmes was distraught.  Just two days after her son's birth, she wrote a letter to UDC to complain about the unfair treatment she had received.

48. Although her position was contingent on continued receipt of grant funding, Ms. Holmes had participated in the audit required for the renewal of the grant that funded her position

in June 2014, and she knew that the position had been re-funded for 2015.  The position

therefore remained available when Ms. Holmes was terminated.

49. In what should have been a joyful time to bond with her newborn son, Ms. Holmes was

overwhelmed with stress and anxiety over the loss of her job.

50. At the time of her termination, Ms. Holmes had been approved for approximately ten (10)

weeks of medical leave.  Upon the birth of her baby, Ms. Holmes became eligible for an

additional sixteen (16) weeks of job-protected family leave, which she would have used

to care for and bond with her son had she not been terminated.

51. As an employee of the D.C. government, Ms. Holmes would have been eligible to receive

pay for approximately eight (8) of those weeks beginning on October 1, 2014.

52. Instead, Ms. Holmes was plunged into financial insecurity.  Although she continuously

applied for new jobs, she was unable to find new employment until May 2015.  In the

interim, she and her family were barely able to make ends meet with the assistance of

public benefits.

53. Ms. Holmes' partner had returned from his position overseas to care for Ms. Holmes

when she was placed on bed rest.  When Ms. Holmes was terminated, he had exhausted

his leave and he was forced to resign from his job so that he could continue to care for

and support Ms. Holmes and their son.

54. Ms. Holmes' new position as an administrative assistant is inferior to her position at

UDC in several significant ways.  She receives a lower salary, has fewer and more

expensive employment benefits, and enjoys considerably less autonomy in her job

responsibilities.

55. Ms. Holmes has been, and continues to be, deeply saddened and humiliated by the treatment she received by UDC.

**COUNT I:**
**VIOLATION OF THE D.C. FAMILY AND MEDICAL LEAVE ACT**
**D.C. § Code 32-501** *et seq.*

56. Ms. Holmes re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

57. As set forth herein, Ms. Holmes was an employee under the DCFMLA because she was employed by UDC for more than one year and she fulfilled the 1,000 (one thousand) minimum quantity of hours required to have coverage.   D.C. Code at § 32-501(1). Defendant was an employer under the DCFMLA, *Id.* at § 32-501(2), and the DCFMLA applied to UDC because UDC employed more than twenty (20) employees within the District of Columbia in the year preceding Ms. Holmes' request for leave. D.C. Code § 32-516(2).

58. As such, Ms. Holmes was entitled to sixteen (16) workweeks of leave for a serious health condition that made her unable to perform the functions of her position. *Id.* at § 32-503(a). Upon her return from such leave, Plaintiff was entitled to be restored to the position she held when her leave commenced or to an equivalent position.  *Id*. at § 32-505(d).

59. Defendant was prohibited from interfering with, restraining, and/or denying Ms. Holmes' exercise of or attempt to exercise her rights under the DCFMLA.  D.C. Code § 32-507(a).

60. While Ms. Holmes was on leave, Defendant notified her that her employment would terminate on September 30, 2014.

61. In so doing, Defendant willfully interfered with, restrained, and/or denied Ms. Holmes' exercise of her DCFMLA rights, in violation of D.C. Code § 32-507(a).

62. Ms. Holmes suffered, and continues to suffer, significant harm as a result of Defendant's violations of the DCFMLA.

## COUNT II:
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000(e), *et seq.*
### (Discrimination on the Basis of Pregnancy)

63. Ms. Holmes re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

64. As set forth herein, Ms. Holmes was at all times relevant to this action an employee, and Defendant an employer, within the meaning of Title VII.

65. At all times relevant to this action Ms. Holmes was a member of a class protected by Title VII in that she was pregnant, had recently given birth to a child or had a pregnancy-related medical condition.

66. Ms. Holmes suffered an adverse employment action when Defendant declined to renew her appointment and terminated her employment on September 30, 2014.

67. Defendant's termination of and denial of employment to Ms. Holmes following her leave for pregnancy-related medical conditions and childbirth constitutes unlawful discrimination because of pregnancy, in violation of Section 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k).

68. Through its discriminatory conduct, Defendant deprived Ms. Holmes of her right to employment on the same terms as enjoyed by employees who are not pregnant, in violation of 42 U.S.C. § 2000e.

69. As a direct and proximate result of Defendant's intentional discriminatory employment practices, Ms. Holmes has suffered and continues to suffer emotional pain, inconvenience,

mental anguish, diminished enjoyment of life, humiliation, and/or related damages in an amount that will be determined at trial.

70. As a direct and proximate result of Defendant's unlawful, discriminatory employment practices, Ms. Holmes lost wages, benefits, and opportunities for promotion.

**COUNT III:**
**VIOLATION OF THE D.C. HUMAN RIGHTS ACT**
**D.C. Code § 2-1401.01 *et seq.***
**(Discrimination on the Basis of Pregnancy)**

71. Ms. Holmes re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

72. As set forth herein, Ms. Holmes was at all times relevant to this action an employee, and Defendant an employer, within the meaning of the DCHRA.

73. At all times relevant to this action Ms. Holmes was a member of a class protected by the DCHRA in that she was pregnant, had recently given birth to a child or had a pregnancy-related medical condition.[1]

74. Ms. Holmes suffered an adverse employment action when Defendant declined to renew her appointment and terminated her employment on September 30, 2014.

75. Defendant's termination of and denial of employment to Ms. Holmes following her leave for pregnancy-related medical conditions and childbirth constitutes unlawful discrimination on the basis of sex, in violation of the DCHRA, D.C. Code § 2-1401.01 *et seq.*

---

[1] The prohibition of discrimination based on sex outlined in D.C. Code § 2-1402.11 includes discrimination on the basis of pregnancy, childbirth, or related medical conditions.  D.C. Code § 2-1401.05.

76. Through its discriminatory conduct, Defendant deprived Ms. Holmes of her right to employment on the same terms as enjoyed by employees who are not pregnant, in violation of D.C. Code § 2-1402.11.

77. As a direct and proximate result of Defendant's intentional discriminatory employment practices, Ms. Holmes has suffered and continues to suffer emotional pain, inconvenience, mental anguish, diminished enjoyment of life, humiliation, and/or related damages in an amount that will be determined at trial.

78. As a direct and proximate result of Defendant's unlawful, discriminatory employment practices, Ms. Holmes lost wages, benefits, and opportunities for promotion.

## COUNT IV:
## VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101 *et seq.*
### (Discrimination on the Basis of a Disability)

79. Ms. Holmes re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

80. As set forth herein, Ms. Holmes was at all times relevant to this action an employee, and Defendant an employer, within the meaning of ADA.

81. At all times relevant to this action Ms. Holmes was disabled within the meaning of the ADA, as she suffered from a physical impairment that substantially limited one or more of her major life activities.  42 U.S.C. § 12102(1).

82. Ms. Holmes suffered an adverse employment action when Defendant declined to renew her appointment and terminated her employment on September 30, 2014.

83. Defendant's termination of and denial of employment to Ms. Holmes following her high-risk pregnancy and delivery constitutes unlawful discrimination on the basis of a disability, in violation of Title I of the ADA, 42 U.S.C. § 12101 *et seq.*

84. Through its discriminatory conduct, Defendant deprived Ms. Holmes of her right to employment on the same terms as enjoyed by individuals who are not disabled, in violation of 42 U.S.C. § 12112.

85. Defendant's actions were motivated by malice and reckless indifference to Ms. Holmes' rights under the law.

86. As a direct and proximate result of Defendant's intentional discriminatory employment practices, Ms. Holmes has suffered and continues to suffer emotional pain, inconvenience, mental anguish, diminished enjoyment of life, humiliation, and/or related damages in an amount that will be determined at trial.

87. As a direct and proximate result of Defendant's unlawful, discriminatory employment practices, Ms. Holmes lost wages, benefits, and opportunities for promotion.

**COUNT V:**
**VIOLATION OF THE D.C. HUMAN RIGHTS ACT**
**D.C. Code § 2-1401.01 *et seq.***
**(Discrimination on the Basis of a Disability)**

88. Ms. Holmes re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

89. As set forth herein, Ms. Holmes was at all times relevant to this action an employee, and Defendant an employer, within the meaning of the DCHRA.

90. At all times relevant to this action Ms. Holmes was disabled within the meaning of the DCHRA, as she suffered from a physical impairment that substantially limited one or more of her major life activities.  D.C. Code § 2-1401.02(5A).

91. Ms. Holmes suffered an adverse employment action when Defendant declined to renew her appointment and terminated her employment on September 30, 2014.

13

92. Defendant's termination of and denial of employment to Ms. Holmes following her high-risk pregnancy and delivery constitutes unlawful discrimination on the basis of a disability, in violation of the DCHRA, D.C. Code § 2-1401.01 *et seq.*

93. Through its discriminatory conduct, Defendant deprived Ms. Holmes of her right to employment on the same terms as enjoyed by individuals who are not disabled, in violation of D.C. Code § 2-1402.11.

94. As a direct and proximate result of Defendant's intentional discriminatory employment practices, Ms. Holmes has suffered and continues to suffer emotional pain, inconvenience, mental anguish, diminished enjoyment of life, humiliation, and/or related damages in an amount that will be determined at trial.

95. As a direct and proximate result of Defendant's unlawful, discriminatory employment practices, Ms. Holmes lost wages, benefits, and opportunities for promotion.

## COUNT VI:
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000(e), *et seq.*
### (Discrimination on the Basis of Sex)

96. Ms. Holmes re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

97. As set forth herein, Ms. Holmes was at all times relevant to this action an employee, and Defendant an employer, within the meaning of Title VII.

98. Ms. Holmes is a female whose behavior – specifically, bearing a child while she was neither living with nor married to the child's father – was not consistent with the Defendant's perception of acceptable female gender roles. Consequently, at all times relevant to this action Ms. Holmes was a member of a class protected by Title VII.

99. Ms. Holmes suffered an adverse employment action when Defendant declined to renew her appointment and terminated her employment on September 30, 2014.

100. Defendant's termination of and denial of employment to Ms. Holmes because of her nonconformity with female sex stereotypes constitutes unlawful discrimination on the basis of sex, in violation of Section 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

101. Through its discriminatory conduct, Defendant deprived Ms. Holmes of her right to employment on the same terms as enjoyed by employees whose behavior conforms with traditional sex stereotypes, in violation of 42 U.S.C. § 2000e.

102. Defendant's actions were motivated by malice and reckless indifference for Ms. Holmes' rights under the law.

103. As a direct and proximate result of Defendant's intentional discriminatory employment practices, Ms. Holmes has suffered and continues to suffer emotional pain, inconvenience, mental anguish, diminished enjoyment of life, humiliation, and/or related damages in an amount that will be determined at trial.

104. As a direct and proximate result of Defendant's unlawful, discriminatory employment practices, Ms. Holmes lost wages, benefits, and opportunities for promotion.

## COUNT VII:
### VIOLATION OF THE D.C. HUMAN RIGHTS ACT
### D.C. Code § 2-1401.01 *et seq.*
### (Discrimination on the Basis of Marital Status)

105. Ms. Holmes re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

106. As set forth herein, Ms. Holmes was at all times relevant to this action an employee, and Defendant an employer, within the meaning of the DCHRA.

107. At all times relevant to this action Ms. Holmes was a member of a class protected by the DCHRA in that she was single and pregnant. D.C. Code § 2-1401.02(17).

108. Ms. Holmes suffered an adverse employment action when Defendant declined to renew her appointment and terminated her employment on September 30, 2014.

109. Defendant's termination of and denial of employment to Ms. Holmes following the birth of her child out of wedlock constitutes unlawful discrimination on the basis of marital status, in violation of the DCHRA, D.C. Code § 2-1401.01 *et seq.*

110. Through its discriminatory conduct, Defendant deprived Ms. Holmes of her right to employment on the same terms as enjoyed by married individuals who bear children, in violation of D.C. Code § 2-1402.11.

111. As a direct and proximate result of Defendant's intentional discriminatory employment practices, Ms. Holmes has suffered and continues to suffer emotional pain, inconvenience, mental anguish, diminished enjoyment of life, humiliation, and/or related damages in an amount that will be determined at trial.

112. As a direct and proximate result of Defendant's unlawful, discriminatory employment practices, Ms. Holmes lost wages, benefits, and opportunities for promotion.

## <u>COUNT VIII:</u>
## VIOLATION OF THE D.C. HUMAN RIGHTS ACT
### D.C. Code § 2-1401.01 *et seq.*
### (Discrimination on the Basis of Family Responsibilities)

113. Ms. Holmes re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

114. As set forth herein, Ms. Holmes was at all times relevant to this action an employee, and Defendant an employer, within the meaning of the DCHRA.

115. At all times relevant to this action Ms. Holmes was a member of a class protected by the DCHRA in that she was, or had the potential to become, a contributor to the support of a person in a dependent relationship – her newborn son.  D.C. Code § 2-1401.02(12).

116. Ms. Holmes suffered an adverse employment action when Defendant declined to renew her appointment and terminated her employment on September 30, 2014.

117. Defendant's termination of and denial of employment to Ms. Holmes in anticipation of her application for and expected use of family leave constitutes unlawful discrimination on the basis of family responsibilities, in violation of the DCHRA, D.C. Code § 2-1401.01 *et seq.*

118. Through its discriminatory conduct, Defendant deprived Ms. Holmes of her right to employment on the same terms as enjoyed by individuals who do not have family responsibilities, in violation of D.C. Code § 2-1402.11.

119. As a direct and proximate result of Defendant's intentional discriminatory employment practices, Ms. Holmes has suffered and continues to suffer emotional pain, inconvenience, mental anguish, diminished enjoyment of life, humiliation, and/or related damages in an amount that will be determined at trial.

120. As a direct and proximate result of Defendant's unlawful, discriminatory employment practices, Ms. Holmes lost wages, benefits, and opportunities for promotion.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Holmes respectfully requests the following relief:

A.  Judgment in favor of Ms. Holmes and against Defendant UDC on all counts of the Complaint;

B.  Injunctive relief, including but not limited to reinstatement and an order restraining Defendant from engaging in further discriminatory conduct of the types of which Ms. Holmes complains herein;

C.  Back pay, in an amount to be determined at trial, which accounts for the salary and benefits that Ms. Holmes would have been awarded but for the Defendant's discriminatory conduct;

D.  Front pay, in the event that reinstatement is not granted;

E.  Compensatory and consequential damages, including for emotional distress, in an amount to be determined at trial;

F.  Punitive damages;

G.  Pre-judgment and post-judgment interest, at the highest rate available under law;

H.  Attorneys' fees and costs incurred in this action; and

I.  Such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts set forth herein.

Dated: December 14, 2015       Respectfully submitted,

By: */s/ Christine E. Tschiderer*_____
Christine E. Tschiderer (D.C. Bar No.  979762)
Matthew K. Handley (D.C. Bar No. 489946)
Peter Romer-Friedman (D.C. Bar No. 993376)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
11 Dupont Circle, NW, Suite 400
Washington, D.C. 20036
(202) 319-1000 (telephone)
(202) 319-1010 (facsimile)

Laura Brown (D.C. Bar No. 488292)
FIRST SHIFT JUSTICE PROJECT
Box 2497
Washington D.C. 20013
(240) 241-0897 (telephone)

*Counsel for Plaintiff Kashawna Holmes*